EXHIBIT "A"

COMMONWEALTH OF PENNSYLVANIA
COURT OF COMMON PLEAS
YORK COUNTY

| | |
|---|---|
| LOUIS A. SANTO, JR. and<br>JOY M. SANTO<br>312 Meadow Trail<br>Dillsburg, PA 17019<br><br>      Plaintiffs,<br><br>   v.<br><br>US BANK NATIONAL ASSOCIATION<br>800 Nicollet Mall<br>Minneapolis, MN 55402<br><br>BANK OF AMERICA CORPORATION<br>100 North Tryon Street<br>Charlotte, NC 28255<br><br>SPECIALIZED LOAN SERVICING LLC<br>8742 Lucent Boulevard<br>Littleton, CO 80129<br><br>WELLS FARGO & COMPANY, d/b/a<br>AMERICA'S SERVICING COMPANY<br>420 Montgomery Street<br>San Francisco, CA 94163<br><br>      Defendants. | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

## INTRODUCTION

This is a consumer protection matter brought by a homeowner attempting to remedy gross misconduct on the part of mortgage banks and mortgage servicers. The banks' and servicers' failure to properly apply payments, and subsequent misrepresentations, forced the plaintiffs into foreclosure and eventually bankruptcy.

## PARTIES

1. Plaintiff Louis Santo, is an adult-individual residing in Dillsburg, Pennsylvania.

2. Plaintiff Joy Santo, is an adult-individual residing in Dillsburg, Pennsylvania.

3. Defendant US Bank National Association ("hereinafter "US Bank") is a business entity formed under the laws of Delaware and headquartered in Minneapolis, Minnesota.

4. Defendant Bank of America Corporation (hereinafter "BofA") is a business entity formed under the laws of Delaware and headquartered in Charlotte, North Carolina.

5. Defendant Specialized Loan Servicing LLC (hereinafter "SLS") is a business entity formed under the laws of Delaware and headquartered in Littleton, Colorado.

6. Defendant Wells Fargo & Company d/b/a America's Servicing Company (hereinafter "ASC") is a business entity formed under the laws of Delaware and headquartered in San Francisco, California.

# FACTS

7. At all relevant times, SLS and ASC were acting as agents and representatives of US Bank and BofA.

8. On January 4, 2006, Plaintiffs executed a mortgage and note payable to Monticello Bank.

9. ASC was the servicer of Plaintiffs' mortgage and note, and was responsible for processing payments, keeping accurate records, properly applying payments, and communicating accurate information to Plaintiffs regarding their mortgage and note.

10. Upon information and belief, during the relevant period, ASC was first acting as an agent and representative of BofA, and then acted as an agent and representative of US Bank.

11. ASC's misconduct, described herein, was performed on behalf of, and on request of, BofA initially, and then performed on behalf of US Bank.

12. In 2015, SLS took over as the servicer of Plaintiffs' mortgage and note.

13. As the new servicer, SLS was responsible for processing payments, keeping accurate records, properly applying payments, and communicating accurate information to Plaintiffs regarding their mortgage and note.

14. SLS' misconduct, described herein, was performed on behalf of, and on request of, US Bank

15. In 2007, Monticello Bank merged into CapitalSouth Bancorp.

16. Upon information and belief, as a result of the merger, Plaintiffs' mortgage and note were transferred or assigned to CapitalSouth Bancorp.

17. On August 21, 2009, CapitalSouth Bancorp was shutdown by the Alabama State Banking Department, and the FDIC was named receiver.

18. According to the FDIC, all mortgages held by CapitalSouth Bancorp were assigned to Iberiabank.

19. Upon information and belief, as a result of the failure of CapitalSouth Bancorp, Plaintiffs' mortgage and note were sold or assigned to Iberiabank.

20. Plaintiffs were not notified of the merger of Monticello Bank and CapitalSouth Bancorp.

21. Plaintiffs were not notified that CapitalSouth Bancorp was the new holder of their mortgage and note.

22. Plaintiffs were not notified of the shutdown of CapitalSouth Bancorp.

23. Plaintiffs were not notified that their mortgage and note were assigned to or transferred to Iberiabank.

24. Upon information and belief, Wells Fargo was not assigned Plaintiffs' note or mortgage through any valid chain of assignment.

25. Upon information and belief, Bank of America was not assigned Plaintiffs' note or mortgage through any valid chain of assignment.

26. Upon information and belief, US Bank was not assigned Plaintiffs' note or mortgage through any valid chain of assignment.

27. Initially, Plaintiffs paid property taxes and insurance directly, and did not have an escrow account with ASC; however, in 2009, Plaintiffs requested that ASC begin escrowing taxes and insurance.

28. ASC complied with Plaintiffs request and began escrowing funds for the

taxes and insurance.

29. In December 2011, Plaintiffs audited the escrow account with ASC and discovered numerous errors by ASC in the application of funds.

30. As a result of ASC's errors, Plaintiffs demanded that ASC stop escrowing tax and insurance funds, and Plaintiffs recommenced paying taxes and insurance directly in January 2012.

31. Despite ASC's past misapplication of escrow funds, Plaintiffs' specific instruction to ASC to stop escrowing funds, and Plaintiffs' direct payments of taxes and insurance, ASC continue to escrow funds.

32. As a result of ASC's conduct, Plaintiffs' payments towards the outstanding principle and interest were misapplied.

33. As a result of ASC's conduct, funds were placed into an escrow account that should not have been placed into that account.

34. As a result of ASC's conduct, it appeared as if Plaintiffs' were behind on their payment obligations when in fact they were not.

35. ASC's misapplication of funds were so severe that they were holding over $70,000 worth of Plaintiffs' monthly payments in a "suspense" account, and not applying them towards Plaintiffs' actual obligations.

36. ASC was the servicer on Plaintiffs' mortgage and note at least through November 2015.

37. As late as November 16, 2015, ASC was still demanding payment of an inaccurate amount.

38. As late as November 16, 2015, ASC had not corrected the misapplication

of Plaintiffs' payments.

39. At all relevant times, up through at least November 16, 2015, ASC was acting as an agent and representative of US Bank and BofA.

40. Up through at least November 16, 2015, ASC's acts and omissions were performed on behalf of US Bank and BofA.

41. At all relevant times, US Bank and BofA had knowledge of, consented to, and directed ASC to perform the acts described herein.

42. On numerous occasions, beginning in March of 2013, counsel for US Bank, acting as US Bank's represented, promised that the error in Plaintiffs' account would be corrected.

43. The errors were never corrected.

44. In March 2012, US Bank instituted a foreclosure action in York County Court of Common Pleas.

45. In its foreclosure complaint, US Bank misrepresented the amount owed on the note.

46. In its foreclosure complaint, US Bank failed to properly credit Plaintiffs' account for the amount of payments they had made on the account.

47. The issue over the amount owed on the note was not actually litigated in the foreclosure action.

48. The issue over whether Plaintiffs' payments were properly applied was not actually litigated in the foreclosure action.

49. In its foreclosure complaint, US Bank alleged that it was the holder of Plaintiffs' note and mortgage and had standing to enforce the note and mortgage.

50. US Bank was not the holder of Plaintiffs' note and mortgage.

51. The assignments attached to US Banks' foreclosure case filings clearly show that there is a break in the chain of assignments, and that US Bank was not the holder.

52. On October 5, 2012, Plaintiffs filed a Chapter 13 Bankruptcy Petition.

53. On February 5, 2013, ASC, on behalf of, and at the direction of US Bank, filed a proof of claim in the bankruptcy matter alleging arrears on the note in the amount of $123,850.18.

54. US Bank's proof of claim was false, inaccurate, and grossly misstated the amount of arrearages.

55. US Bank's proof of claim misstated the amount of Plaintiffs' alleged arrearages as a result of Defendants prior failure to properly apply Plaintiffs' payments.

56. US Bank's proof of claim also contained multiple inaccurate and improper charges, including, but not limited to, escrow amounts, sheriffs' fees, and attorneys' fees.

57. US Bank's proof of claim also misrepresented that it was the holder of Plaintiffs' note and mortgage.

58. Following US Bank's filing of the inaccurate proof of claim, it was repeatedly requested that US Bank correct its proof of claim.

59. US Bank refused to correct its proof of claim, and maintained the inaccurate filing.

60. On September 13, 2013, Plaintiffs filed an objection to US Bank's proof of claim in the bankruptcy matter.

61. Plaintiffs objection was based on the fact that the servicer, ASC, acting on

behalf of US Bank and Bank of America, had misapplied Plaintiffs' payments over numerous years, failed to keep an accurate accounting of payments, and misstated the amount allegedly owed on Plaintiffs' note.

62. Plaintiffs' objection to US Bank's proof of claim in the bankruptcy case was sustained, and the Judge struck the entirety of US BANK's claim in the bankruptcy matter on October 16, 2013.

63. Despite the court ruling that the arrearages claimed by US Bank on Plaintiffs' note were inaccurate, US Bank, ASC and SLS continued to demand payment of the inaccurate arrearages.

64. As late as November 16, 2015, ASC was demanding that Plaintiffs' pay an amount of arrearages that the bankruptcy court had previously held Plaintiffs did not owe.

65. As late as November 16, 2015, ASC violated the bankruptcy court's order by demanding payment of the inaccurate arrearages amount.

66. SLS took over as the servicer of Plaintiffs' note in 2015.

67. When SLS took over as the servicer of the mortgage and note, SLS continued the misconduct in misapplying Plaintiffs' payments on the note.

68. ASC's original misapplication of funds was exacerbated by SLS' continued misapplication of payments.

69. As a result of SLS' conduct, it appeared as if Plaintiffs' were behind on their payment obligations when in fact they were not.

70. Despite numerous requests to SLS to fix the problems caused by the misapplication of funds, SLS refused.

71. In December 2015, when Plaintiffs were notified of the fact that SLS was

now the servicer of their mortgage and note, Plaintiffs wrote a detailed letter to SLS describing the prior misapplication of payments, and requesting that SLS remedy the situation.

72. SLS did not remedy the errors caused by the misapplication of payments, but instead attempted to collect the inaccurate amount.

73. SLS did not remedy the errors caused by the misapplication of payments, but instead attempted to collect an amount in violation of the bankruptcy Court's order.

74. In March 2017, Plaintiffs sought modification of the mortgage and note to correct the prior misapplication of payments, and allow for Plaintiffs to make their monthly payments.

75. SLS responded to Plaintiffs' modification request by demanding that Plaintiff pay the arrearages that the bankruptcy court had previously ruled were not owed.

76. SLS responded to Plaintiffs' modification request by demanding that Plaintiff pay an amount that was inaccurate as a result of SLS and US Bank's failure to appropriately apply Plaintiffs' prior payments on the note.

77. In response, Plaintiffs again pointed out that prior payments had been misapplied; yet SLS failed to remedy the situation in any manner, choosing instead to simply ignore the harmful errors.

## COUNT I
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## AGAINST ALL DEFENDANTS

78. Plaintiffs re-allege all prior allegations as if fully set forth here.

79. Plaintiffs are persons and consumers as those terms are defined and used in the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq., ("UTPCPL").

80. Defendants are persons as that term is define and used in the UTPCPL.

81. Defendants' conduct described above occurred in the course of "trade" and "commerce" as those terms are defined by the UTPCPL.

82. The underlying debt, purportedly held by US Bank and BofA, and serviced by SLS and ASC was primarily for personal, family or household purposes.

83. Defendants individually, and collectively engaged in "unfair or deceptive acts or practices" as that phrase is defined by, and used in, the UTPCPL.

84. More specifically, US Bank engaged in "unfair or deceptive acts or practices" when it:

    A. Misapplied Plaintiffs' mortgage payments;

    B. Wrongfully sought foreclosure;

    C. Filed a foreclosure complaint containing numerous false statements, inaccuracies, and misrepresentations;

    D. Misrepresented that it was the holder of Plaintiffs' mortgage and note;

    E. Misrepresented that it had standing to enforce the note and mortgage;

    F. Refused to remedy the misapplication of payments when it was pointed out to US Bank on multiple occasions;

G. Filed a false and inaccurate proof of claim in Plaintiffs' bankruptcy matter;

H. Refused to correct the proof of claim when the errors were pointed out to US Bank;

I. Refused to honor the Bankruptcy Court's Order stating that the amount of arrearages was inaccurate;

J. Misapplied escrow funds;

K. Improperly held escrow funds;

L. Improperly charge excessive escrow funds;

M. Wrongfully held over $70,000 of Plaintiffs' payments in a suspense account; and

N. Engaged in other unfair and deceptive acts and practices in relation to Plaintiffs' note and mortgage.

85. BofA engaged in "unfair or deceptive acts or practices" when it:

A. Misapplied Plaintiffs' mortgage payments;

B. Misrepresented that it was the holder of Plaintiffs' mortgage and note;

C. Refused to remedy the misapplication of payments;

D. Misapplied escrow funds;

E. Improperly held escrow funds;

F. Improperly charge excessive escrow funds; and

G. Engaged in other unfair and deceptive acts and practices in relation to Plaintiffs' note and mortgage.

86. SLS engaged in "unfair or deceptive acts or practices" when it:

   A. Misapplied Plaintiffs' prior mortgage payments;

   B. Made Plaintiffs' modification application contingent on payment of arrearages that a Court previously found to be inaccurate, and not owed by Plaintiffs;

   C. Failed to remedy the errors caused by the misapplication of Plaintiffs' payments when it was pointed out in writing, and in detail to SLS;

   D. Continued to misrepresent the amount of arrearages owed by Plaintiffs;

   E. Violated the bankruptcy Court Order and sought payment of arrearages that the Court previously found to be not owed by Plaintiffs; and

   F. Engaged in other unfair and deceptive acts and practices in relation to Plaintiffs' note and mortgage.

87. ASC engaged in "unfair or deceptive acts or practices" when it:

   A. Misapplied Plaintiffs' mortgage payments;

   B. Wrongfully sought foreclosure;

   C. Filed a foreclosure complaint containing numerous false statements, inaccuracies, and misrepresentations;

   D. Misrepresented that it was the holder of Plaintiffs' mortgage and note;

E. Misrepresented that it had standing to enforce the note and mortgage;

F. Refused to remedy the misapplication of payments when it was pointed out to ASC on multiple occasions;

G. Filed a false and inaccurate proof of claim in Plaintiffs' bankruptcy matter;

H. Refused to correct the proof of claim when the errors were pointed out to ASC;

I. Refused to honor the Bankruptcy Court's Order stating that the amount of arrearages was inaccurate;

J. Misapplied escrow funds;

K. Improperly held escrow funds;

L. Improperly charged excessive escrow funds;

M. Wrongfully held over $70,000 of Plaintiffs' payments in a suspense account; and

N. Engaged in other unfair and deceptive acts and practices in relation to Plaintiffs' note and mortgage.

88. Defendants engaged in the unfair and deceptive conduct described above willfully and intentionally.

89. The unfair and deceptive conduct that Defendants engaged in was egregious and reckless.

90. As a direct result of Defendants conduct, Plaintiffs suffered severe harm, including, but not limited to, being subject to a wrongful foreclosure, and being forced into bankruptcy to avoid losing their home.

## COUNT II
## FAIR CREDIT EXTENSION UNIFORMITY ACT
## AGAINST ALL DEFENDANTS

91. Plaintiffs re-allege all prior allegations as if fully set forth here.

92. SLS and ASC are "debt collectors" as that term is used in, and defined by the Fair Credit Extension Uniformity Act, 73 P.S. § 2270.1 et seq., ("FCEUA").

93. US Bank and BofA are "creditors" as that term is used in, and defined by the FCEUA.

94. As described herein, Defendants violated the FCEUA independently and collectively with respect to Plaintiffs' mortgage and note.

95. Defendants violated § 2270.4(b)(5) of the FCEUA, and its subparts, when they used false and misleading representations in an attempted to collect a debt, which included, but is not limited to, the misrepresentation of the amount of debt, arrearages, and escrow owed by Plaintiffs; demanding payments of amounts previously found to be not owed by Plaintiffs; the filing of an inaccurate and false foreclosure complaint; the filing of an inaccurate and false proof of claim; making modification of Plaintiffs' mortgage and note contingent on payments of amounts not owed; failing to remedy the misapplication of Plaintiffs' payments; and misrepresenting the identity of the holder of the note and mortgage.

96. Defendants violated § 2270.4(b)(6) of the FCEUA, and its subparts, when they used unfair and unconscionable means in an attempted to collect a debt, which

included, but is not limited to, withholding payments in a "suspense" account; filing numerous inaccurate and false filings in state and federal court; refusing to correct errors caused by their misapplication of Plaintiffs' payments; failing to keep an accurate record of Plaintiffs' account; failing to properly apply Plaintiffs' payments; ignoring the multiple requests from Plaintiffs and their attorneys to correct the glaring errors caused by their misapplication of Plaintiffs' funds; and by ignoring the Federal Court order holding that the amount of arrearages sought by Defendants was inaccurate.

97. Defendants use of false statements and misrepresentation; along with their use of unfair and unconscionably practices described above was willful and intentional.

98. The false statements, misrepresentations and unfair and unconscionable practices described above were egregious and reckless.

99. As a direct result of Defendants conduct, Plaintiffs suffered severe harm, including, but not limited to, being subject to a wrongful foreclosure, and being forced into bankruptcy to avoid losing their home.

## COUNT III
## BREACH OF CONTRACT - EXPRESSED TERMS
## AGAINST US BANK, N.A. AND BANK OF AMERICA

100. Plaintiffs re-allege all prior allegations as if fully set forth here.

101. The underlying note is a contract, signed under seal, and attached hereto as Exhibit A ("Note").

102. The Note required Plaintiffs' payments to be applied against the outstanding principle, interest and fees in a specific way.

103. BofA and then US Bank at all relevant times allege that they are the holder of the Note, and therefore, the other party to the contact.

104. US Bank and BofA, through their agents, failed to properly apply Plaintiffs' payments in accordance with the terms of the Note.

105. US Bank and BofA's failure to comply with the terms of the Note, and properly apply Plaintiffs payments, is a material breach of the Note.

106. US Bank and BofA were aware of their breach.

107. US Bank and BofA were notified on multiple occasions that they were misapplying Plaintiffs' payments in breach of the Note.

108. US Bank and BofA have failed to remedy their breach.

109. US Bank and BofA's breach of the Note has caused Plaintiffs to suffer severe harm, including, but not limited to, being subject to a wrongful foreclosure, and being forced into bankruptcy to avoid losing their home.

110. Plaintiffs' have suffered substantial consequential damages that were known to, and foreseeable by, US Bank and BofA.

## COUNT IV
### BREACH OF CONTRACT – IMPLIED TERMS
### AGAINST US BANK, N.A. AND BANK OF AMERICA

111. Plaintiffs re-allege all prior allegations as if fully set forth here.

112. As a contract, the Note contained the implied covenant of good faith and fair dealing.

113. Under the Note, US Bank and BofA were obligated to act in good faith and deal fairly with Plaintiffs.

114. US Bank and BofA failed to comply with their obligation of good faith and fair dealing when they misapplied Plaintiffs' payments, wrongfully held escrow funds, wrongfully applied escrow funds, held funds in a "suspense" account, filed

inaccurate court filings, and refused to correct the errors that were brought to their attention on multiple occasions.

115. US Bank and BofA's failure to comply with the covenant of good faith and fair dealing is a material breach of the Note.

116. US Bank and BofA were aware of their breach.

117. US Bank and BofA have failed to remedy their breach.

118. US Bank and BofA's breach of the Note has caused Plaintiffs to suffer severe harm, including, but not limited to, being subject to a wrongful foreclosure, and being forced into bankruptcy to avoid losing their home.

119. Plaintiffs' have suffered substantial consequential damages that were known to, and foreseeable by, US Bank and BofA.

WHEREFORE, Plaintiffs respectfully request judgment, in excess of $50,000.00, in their favor and against all Defendants jointly and separately as follows:

    A. Actual damages;

    B. Compensatory damages;

    C. Consequential damages;

    D. Punitive damages;

    E. Attorneys' fees and costs; and

    F. All other remedies that this Court finds just and proper.

## JURY DEMAND

Plaintiffs demand trial by jury on all triable issues.

Respectfully submitted,

_____
Joseph L. Gentilcore (No. 311703)
DIEHL LAW LLC
PO Box 43098
Philadelphia, PA 19129
P: (267) 614-6515
F: (908) 450-1594
jgentilcore@diehltrials.com

## VERIFICATION

I, Louis Santo, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties of Section 4904 of the Crimes Code (18 PA. C.S. 4904) related to unsworn falsification to authorities.

_____
Louis Santo
LOUIS A. Santo, JC

## VERIFICATION

I, Joy Santo, verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information and belief. This statement is made subject to the penalties of Section 4904 of the Crimes Code (18 PA. C.S. 4904) related to unsworn falsification to authorities.

_____
Joy Santo
Joy M Santo