## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LOUIS A. SANTO, JR. and JOY M. SANTO, | : : : | CIVIL ACTION NO. 1:17-CV-1597 |
| | : | (Chief Judge Conner) |
| Plaintiffs | : : | |
| v. | : : | |
| U.S. BANK NATIONAL ASSOCIATION, BANK OF AMERICA CORPORATION, SPECIALIZED LOAN SERVICING LLC, and WELLS FARGO & COMPANY d/b/a AMERICA'S SERVICING COMPANY, | : : : : : : : : | |
| Defendants | : | |

## MEMORANDUM

Plaintiffs Louis A. Santo, Jr. and Joy M. Santo ("the Santos") filed this action alleging breach of contract and numerous statutory violations by defendants regarding a mortgage loan and foreclosure. Defendants have moved to dismiss every claim in the Santos' amended complaint. (Docs. 19, 20). We will grant in part and deny in part defendants' motions to dismiss.

## I.    Factual Background & Procedural History

In early 2006, the Santos borrowed $656,000 from nonparty Monticello Bank and executed a promissory note as consideration for the loan. (Doc. 15 ¶ 10; Doc. 28-2). The Santos secured the note with a mortgage, which offers as collateral real property located in Dillsburg, Pennsylvania. (Doc. 15 ¶ 10; Doc. 22-1, Ex. B). In the mortgage, Monticello Bank named Mortgage Electronic Registration Systems, Inc. ("MERS") as its nominee. (Doc. 22-1, Ex. B at 1). According to the amended

complaint, the loan was initially serviced by defendant Wells Fargo & Company doing business as America's Servicing Company ("ASC"). (Doc. 15 ¶¶ 6, 11). As servicer, ASC was responsible for "processing payments, keeping accurate records, properly applying payments, and communicating accurate information" about the mortgage to the Santos. (Id. ¶ 11).

The Santos initially paid property taxes and homeowner's insurance directly rather than through an escrow account. (Id. ¶ 29). In 2009, the Santos allegedly asked ASC to begin escrowing taxes and insurance, and ASC complied. (Id. ¶¶ 29-30). Two years later, the Santos audited the escrow account and purportedly found that ASC had committed numerous errors. (Id. ¶ 31). Due to these alleged errors, the Santos demanded that ASC no longer escrow their taxes and insurance and, beginning in January 2012, they recommenced directly paying both. (Id. ¶ 32). Contrary to the Santos' wishes, however, ASC allegedly continued to escrow funds, resulting in misapplication of the Santos' mortgage payments. (Id. ¶¶ 33-34). According to the amended complaint, portions of the payments that should have been applied to principal and interest were instead incorrectly placed into escrow, creating the appearance that the Santos were behind on their mortgage obligations. (Id. ¶¶ 34-36). ASC's misapplication of funds was so allegedly egregious that at one point it was holding over $70,000 of the Santos' payments in a "suspense" account rather than properly applying them toward principal and interest. (Id. ¶ 37).

According to defendant U.S. Bank National Association ("U.S. Bank"), Monticello Bank—through its nominee MERS—assigned the mortgage to U.S. Bank on September 29, 2011. (See Doc. 22-1, Ex. C at 1-2). In March 2012, U.S.

Bank instituted an *in rem* foreclosure proceeding for the Dillsburg property in the Court of Common Pleas for York County, Pennsylvania. (Doc. 15 ¶ 46; Doc. 22-1, Ex. E). In its foreclosure complaint, U.S. Bank alleged that beginning in January 2011 and every month thereafter, the Santos failed to make the required payments on their loan. (Doc. 22-1, Ex. E at 5). U.S. Bank averred that under the mortgage's acceleration clause, the entire principal balance and all outstanding interest were due. (Id. at 6). Adding together principal, interest, late fees, and escrow deficit, U.S. Bank claimed the Santos owed approximately $672,000. (Id.) The Santos allege that U.S. Bank failed to properly credit their account for payments made and thus misrepresented the amount owed in the foreclosure action. (Doc. 15 ¶¶ 47-48).

In May 2012, the common pleas court granted default judgment in the amount of $672,367.13 in favor of U.S. Bank due to the Santos' failure to respond to the foreclosure complaint. (Id. ¶ 54; Doc. 22-1, Ex. F). The Santos subsequently attempted to have U.S. Bank and ASC correct the amount of arrears owed so that they could "cure" or "reinstate" the mortgage. (Doc. 15 ¶¶ 55, 58). U.S. Bank instead attempted to sell the Dillsburg property at a sheriff's sale in October 2012. (Id. ¶ 59). That same month, the Santos filed for bankruptcy to avoid the sale of their home. (Id. ¶ 60).

In the bankruptcy proceeding, U.S. Bank—through ASC—filed a proof of claim alleging mortgage arrears of approximately $124,000. (Id. ¶ 61). The Santos aver that U.S. Bank's proof of claim was inaccurate and false and that it grossly overstated the amount of arrears owed. (Id. ¶ 62). The bankruptcy court struck U.S. Bank's claim in its entirety. (Id. ¶¶ 68-70). After successfully moving for relief

3

from the bankruptcy stay, U.S. Bank and ASC continued to demand payment of the overstated arrearage despite the Santos' repeated attempts to correct the errors. (Id. ¶¶ 58, 66, 71-73; Doc. 22-1, Ex. G at 14).

Around November 2015, Specialized Loan Servicing LLC ("SLS") began servicing the Santos' account. (Doc. 15 ¶¶ 38, 74, 81). On December 5, 2015, SLS notified the Santos that it had assumed servicing responsibilities and instructed them that if they disputed the amount that SLS claimed they owed, they were to put their dispute in writing. (Id. ¶ 81). The Santos purportedly complied and wrote a detailed letter to SLS describing ASC's misapplication of payments and requesting that SLS remedy the inaccuracies. (Id. ¶ 82). After receiving the Santos' letter, SLS allegedly failed to investigate the matter, did not communicate at all with the Santos about the dispute or SLS's conclusions, and never corrected the errors. (Id. ¶¶ 83-89). The Santos aver that SLS continued to misapply their loan payments in the same manner as ASC. (Id. ¶¶ 75-76).

The Santos attempted to modify their mortgage in March 2017. (Id. ¶ 91). In response, SLS purportedly demanded that the Santos pay off the arrearage, which continued to reflect an inaccurate and inflated amount. (Id. ¶ 93). The Santos once again attempted to demonstrate to SLS why the asserted arrearage was incorrect, to no avail. (Id. ¶ 94).

The Santos filed a complaint in state court in August 2017, which Bank of America Corporation ("Bank of America"), U.S. Bank, ASC, and SLS (collectively, "defendants") jointly removed to this court. The Santos amended their complaint as of right following defendants' first motion to dismiss. In their amended

complaint, the Santos allege violations by all defendants of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count I) and Fair Credit Extension Uniformity Act (Count II); breach of contract by U.S. Bank and Bank of America (Count III); breach of the implied covenant of good faith and fair dealing by U.S. Bank and Bank of America (Count IV); and violations by SLS of the federal Fair Debt Collection Practices Act (Count V) and Real Estate Settlement Procedures Act (Count VI). Defendants move to dismiss each claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The motions are fully briefed and ripe for disposition.

## II.   Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (quoting Pinker v. Roche Holdings, Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)). In addition to reviewing the facts contained in the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents. Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010) (citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993)).

Federal notice and pleading rules require the complaint to provide "the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Phillips, 515 F.3d at 232 (alteration in original) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To test the sufficiency of the complaint, the court conducts a three-step inquiry. See Santiago v. Warminster Township, 629 F.3d 121, 130-31 (3d Cir. 2010). In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" Id. at 130 (alteration in original) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)). Next, the factual and legal elements of a claim must be separated; well-pleaded facts are accepted as true, while mere legal conclusions may be disregarded. Id. at 131-32; see Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Once the court isolates the well-pleaded factual allegations, it must determine whether they are sufficient to show a "plausible claim for relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 556. A claim is facially plausible when the plaintiff pleads facts "that allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

## III. <u>Discussion</u>

Defendants attack the sufficiency of each claim in the amended complaint. We begin by addressing the two claims asserted against all defendants before turning to the remaining counts directed at specific defendants.

### A. **Unfair Trade Practices and Consumer Protection Law**

The Santos allege in Count I that all defendants violated the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 PA. STAT. AND CONS.

Stat. Ann. §§ 201-1 to 201-9.3, by intentionally engaging in "unfair and deceptive trade practices." (Doc. 15 ¶¶ 103, 108). The Santos aver that defendants, *inter alia*, misapplied the Santos' mortgage payments, improperly managed escrow funds, refused to correct errors after receiving notice thereof, wrongfully sought foreclosure, and misrepresented the amount the Santos owed. Defendants counter that the Santos fail to state a claim under the UTPCPL because they have not pled justifiable reliance on any allegedly wrongful conduct. We agree.

The UTPCPL provides a private cause of action for persons aggrieved by violations of that statute. See 73 Pa. Stat. and Cons. Stat. Ann. § 201-9.2. The "underlying foundation" of the UTPCPL is the prevention of fraud. Weinberg v. Sun Co., 777 A.2d 442, 446 (Pa. 2001) (citation omitted). Section 201-2(4) lists various types of conduct that qualify as unfair competition or "unfair or deceptive" practices. 73 Pa. Stat. and Cons. Stat. § 201-2(4)(i)–(xxi). To bring such a claim, a plaintiff must demonstrate that he or she "justifiably relied on the defendant's wrongful conduct or representation" and suffered harm as a result. Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004) (citation omitted); Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222-26 (3d Cir. 2008).

The Santos do not specify what portion of Section 201-2(4) defendants allegedly violated. We thus construe the Santos' claims as falling under the "catchall" provision found in subsection (xxi), which bars "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

73 PA. STAT. AND CONS. STAT. ANN. § 201-2(4)(xxi).[1] Nowhere in the amended complaint, however, do the Santos plead that they justifiably relied on the conduct or representations of any defendant. To the contrary, the Santos aver that at all relevant times they expressly disputed defendants' representations regarding the escrow and arrearage calculations.

The Santos' briefing does not cure the amended complaint's deficiencies. There, the Santos allege—in conclusory fashion—that they "relied on" (1) the note and mortgage regarding the application of payments; (2) ASC's escrow analysis, billing, statements, and representations; and (3) the "false representations" by ASC, U.S. Bank, and Bank of America that the Santos were delinquent on their mortgage payments. (Doc. 28 at 17). First, it is axiomatic that pleadings cannot be amended through briefing in opposition to a motion to dismiss. Frederico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) (citing Commw. of Pa. *ex rel.* Zimmerman v. PepsiCo, Inc., 836 F.2d 173, 181 (3d Cir. 1988)). Second, the Santos misunderstand the meaning of "reliance" under the UTPCPL. Reliance means that the Santos took, or failed to take, some action in response to defendants' allegedly wrongful conduct. See *Reliance*, BLACK'S LAW DICTIONARY (10th ed. 2014); see, e.g., Milliken v. Jacono, 103 A.3d 806, 808 (Pa. 2014) (contracting for sale of real estate); Toy v. Metro. Life Ins. Co., 928 A.2d 186, 189 (Pa. 2007) (purchasing life insurance); Yocca, 854 A.2d at 439 (buying season tickets for sporting event); Weinberg, 777 A.2d at 446 (purchasing particular type of gasoline); Hunt, 538 F.3d at 227-28 (buying smokeless

---

[1] The Santos reference the catchall provision in their briefing, further supporting this construction. (See Doc. 28 at 15-16).

tobacco product). The Santos do not set forth any action that they were induced to undertake or forego as a consequence of defendants' purportedly unlawful conduct, and thus they fail to properly plead justifiable reliance.[2] Count I therefore fails to state a claim for relief under the UTPCPL.

### B. Fair Credit Extension Uniformity Act

The Santos next allege that defendants violated the Fair Credit Extension Uniformity Act ("FCEUA"), 73 PA. STAT. AND CONS. STAT. ANN. §§ 2270.1-2270.6. The Santos contend that defendants contravened Section 2270.4(b)(5) by, *inter alia*, using false and misleading representations to collect a debt, misrepresenting the arrearage, filing inaccurate legal documents including a foreclosure complaint, and failing to remedy account errors. They further aver that defendants violated Section 2270.4(b)(6) by using unfair and unconscionable means to collect a debt including wrongfully holding payments in a suspense account, refusing to correct errors after notice thereof, failing to keep adequate records, and failing to properly apply payments.

---

[2] We acknowledge that in Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC, 40 A.3d 145 (Pa. Super. Ct. 2012), the Pennsylvania Superior Court specifically addressed the 1996 amendment to the catchall provision that added liability for "deceptive conduct" in addition to fraud. Bennett does not alter our analysis. It simply held that proving common law fraud was not required to establish a claim under the post-1996 catchall provision and that "misleading" or "deceptive" conduct could suffice. Bennett, 40 A.3d at 155-56. The Bennett court did not modify the justifiable reliance requirement for private actions under the UTPCPL. Kern v. Lehigh Valley Hosp., 108 A.3d 1281, 1289-90 (Pa. Super. Ct. 2015). The element of justifiable reliance is not a product of fraudulent conduct but rather reflects the General Assembly's incorporation of reliance and causation into the private-action provisions of the UTPCPL. Id.

The FCEUA does not provide its own cause of action to enforce its provisions.  See Kern, 108 A.3d at 1290.  Violations of the FCEUA instead must be enforced through the UTPCPL.  73 PA. STAT. AND CONS. STAT. ANN. § 2270.5(a); Kaymark v. Bank of Am., N.A., 783 F.3d 168, 182 (3d Cir. 2015).  This particular drafting "evinces a clear intent . . . that FCEUA claims be treated in the same manner as other private action claims under the UTPCPL."  Kern, 108 A.3d at 1290.  Accordingly, private actions to enforce FCEUA violations must satisfy the pleading requirements of private UTPCPL claims.  Id.; Kaymark, 783 F.3d at 182.  Because the Santos have failed to adequately plead justifiable reliance for their UTPCPL claims, it follows that their FCEUA claims are insufficient under the same rationale.

The Santos' claim concerning violations of Section 2270.4(b)(6) fails for an additional reason.  Section 2270.4(b)(6) lists eight specific ways a creditor can violate the FCEUA in collecting or attempting to collect a debt.  See 73 PA. STAT. AND CONS. STAT. ANN. § 2270.4(b)(6)(i)–(viii).  The Santos do not specify what subsection defendants purportedly violated, nor do the allegations appear to fall into any of the categories of conduct found in subsections (i) through (viii).  We will dismiss the Santos' claims under the FCEUA.

## C.      Breach of Contract

In Count III, the Santos claim U.S. Bank and Bank of America are liable for breach of contract in relation to the note.  A breach of contract claim under Pennsylvania law[3] consists of three elements: (1) the existence of a contract that

---

[3] The parties agree that Pennsylvania law governs state law claims in the matter *sub judice*.

includes its essential terms; (2) a breach of that contract; and (3) damages resulting from the breach.  <u>Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.</u>, 137 A.3d 1247, 1258 (Pa. 2016).  U.S. Bank and Bank of America maintain that the Santos cannot satisfy the second element, *viz.*, the pleadings fail to plausibly state that either defendant breached a contractual duty owed to the Santos under the note.

U.S. Bank and Bank of America are correct.  The amended complaint, on its face, fails to identify any obligation owed under the note that was breached by either defendant.  The Santos generally plead that the note "required payments to be applied against the outstanding principle [sic], interest and fees in a specific way" and that U.S. Bank and Bank of America "failed to properly apply [the Santos'] payments in accordance with the terms of the Note."  (Doc. 15 ¶¶ 122, 124-25).[4]  But the Santos have not identified any provision in the two-page note establishing such a duty.  Whatever obligations the note creates for the lender or note holder are clearly set forth in that document.  Consequently, the Santos'

---

[4] The Santos intended to attach the note as an exhibit to the amended complaint, (<u>see</u> Doc. 15 ¶ 121), but inadvertently failed to do so.  After realizing their error, the Santos provided a copy of the note with their briefing.  (<u>See</u> Doc. 28-2).

conclusory allegations of breach of the note, without more, are insufficient to state a claim for relief.[5]

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing

The Santos aver in Count IV that U.S. Bank and Bank of America breached the implied covenant of good faith and fair dealing. This claim fails Rule 12(b)(6) scrutiny as well. Generally, there is no standalone cause of action for breach of the implied covenant of good faith and fair dealing. Burton v. Teleflex Inc., 707 F.3d 417, 432 (3d Cir. 2013) (citing LSI Title Agency, Inc. v. Evaluation Servs., Inc., 95 A.2d 384, 392 (Pa. Super. Ct. 2008)). Such actions are "subsumed" in breach of contract claims. Id. Pennsylvania recognizes a handful of exceptions to this rule, none of which applies in the case *sub judice*. See Northview Motors, Inc. v. Chrysler Motors Corp., 227 F.3d 78, 91-92 (3d Cir. 2000) (citing Creeger Brick & Bldg. Supply v. Mid-State Bank & Tr. Co., 560 A.2d 151, 153-54 (Pa. Super. Ct. 1989)). We will accordingly dismiss Count IV for failure to state a claim for relief.

### E. Fair Debt Collection Practices Act

In Count V, the Santos contend that SLS violated multiple provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692p. The Santos

---

[5] In their briefing, the Santos also rely on the mortgage as a source of contractual rights. We again note that pleadings cannot be amended through briefing in opposition to a motion to dismiss. Frederico, 507 F.3d at 201-02 (citing Commw. of Pa. *ex rel.* Zimmerman, 836 F.2d at 181). Moreover, the Santos still fail to identify any provision in the mortgage that sets forth the particular duties alleged in paragraphs 122, 124, and 125 of the amended complaint. Without grounding their claims of breach in the terms of the contracts at issue, the Santos cannot plausibly state a claim for relief. We nonetheless observe that the instant mortgage contains detailed provisions that establish obligations regarding payments, application of payments, escrow, taxes, and insurance. (See Doc. 22-1, Ex. B ¶¶ 1-5).

identify, in particular, Sections 1692(e), 1692(e)(2)(A), 1692e(10), 1692f, and 1692g(b).

Section 1692e proscribes the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692(e)(2)(A) prohibits the "false representation of . . . the character, amount, or legal status of any debt" in the collection of a debt. Id. § 1692e(2)(A). Section 1692e(10) proscribes the use of "any false representation or deceptive means to collect or attempt to collect any debt[.]" Id. § 1692(e)(10). Section 1692f generally forbids the use of any "unfair or unconscionable means" to collect a debt. Id. § 1692f. Section 1692g(b), in pertinent part, requires a debt collector to cease collection of a disputed debt after receiving notice of the consumer's dispute until the debt collector obtains verification of the debt or a copy of a judgment and mails it to the consumer. Id. § 1692g(b). According to the Santos, SLS violated these provisions by misrepresenting the amount owed (including arrears), attempting to collect an amount not authorized by the loan documents or by law, failing to cease collection efforts after receiving notice of the dispute, failing to provide verification of the debt to the Santos, and continuing collection efforts after receiving notice of the dispute but before providing the required verification.

To state an FDCPA claim, a plaintiff must plead that (1) he or she is a consumer; (2) the defendant is a debt collector; (3) the challenged action concerns the defendant's attempt to collect a "debt" as defined by the FDCPA; and (4) the defendant—in attempting to collect the debt—violated a provision of the FDCPA. Douglass v. Convergent Outsourcing, 765 F.3d 299, 303 (3d Cir. 2014). SLS challenges only the fourth prong of the Santos' FDCPA claims. SLS contends that

the Santos have not sufficiently pled any action by SLS that could constitute "actionable communication or [debt] collection attempts" because the amended complaint does not identify any specific communication intended "to induce payment by the debtor."  (Doc. 21 at 14; Doc. 31 at 8).

We find that the Santos have plausibly stated a claim for violations of the FDCPA.  Specifically, the Santos pled that they are consumers, that SLS is a debt collector, that SLS invited the Santos to present any dispute they had with the debt amount, that the Santos responded to SLS with a detailed written dispute, and that SLS took no responsive action and continued to attempt to collect on the disputed debt despite the requirements of Section 1692g(b).  The Santos further pled that, in response to a mortgage-modification request, SLS responded with a demand for payment of an inaccurate debt and arrears amount that was unauthorized by the underlying loan documents.  These allegations, taken as true, state a claim for violations of Sections 1692e, 1692f, and 1692g.

We reject SLS's argument that the alleged mortgage-modification correspondence cannot constitute an actionable debt-collection communication as a matter of law.  The FDCPA broadly defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium."  15 U.S.C. § 1692a(2).  And the Third Circuit interprets "debt collection" activities expansively.  See, e.g., Kaymark, 783 F.3d at 176-79; Piper v. Portnoff Law Assocs., Ltd., 396 F.3d 227, 232-35 (3d Cir. 2005).  We see no reason that SLS's alleged mortgage-modification demand could not constitute an actionable debt-

collection communication, and thus decline to dismiss the related Section 1692e claims at the 12(b)(6) stage. SLS's motion to dismiss Count V will be denied.

### F. Real Estate Settlement Procedures Act

The Santos' final claim asserts that SLS violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601–2617. According to the Santos, they provided a "notice of error"[6] to SLS regarding the inaccurate debt and arrears amounts, but SLS failed to properly respond under the requirements of Section 2605(e)(2). SLS counters that the Santos' pleading is deficient because it lacks sufficient detail regarding the timing, content, and form of the alleged notice.

We are constrained to agree with SLS that the amended complaint fails to provide sufficient detail regarding the qualified written request the Santos allege they mailed to SLS. Specifically, the amended complaint does not state when the Santos mailed their detailed dispute letter to SLS, and the Santos did not attach a copy of the letter with their pleading. Without such information, the Santos cannot plausibly plead a violation of Section 2605(e)(2) by SLS. In their briefing, the Santos claim that the letter was sent in December 2015, but the Santos' briefing does not cure the amended complaint's deficiency. See Frederico, 507 F.3d at 201-02 (citing Commw. of Pa. _ex rel._ Zimmerman, 836 F.2d at 181). Count VI will be dismissed for failure to state a claim under RESPA.

---

[6] We construe "notice of error" to mean a "qualified written request" asserting account errors pursuant to Section 2605(e)(1)(B).

### G.    Leave to Amend

The Santos seek leave to amend in the event that any of their claims are found to be insufficient.  Under Federal Rule of Civil Procedure 15, leave to amend should be freely given "when justice so requires."  FED. R. CIV. P. 15(a)(2).  In the seminal case of <u>Foman v. Davis</u>, 371 U.S. 178 (1962), the Supreme Court of the United States provided guidance for when leave to amend may be denied. Circumstances that weigh against granting leave to amend include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.  <u>Foman</u>, 371 U.S. at 182.  Rule 15 aims to offer the "maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities."  <u>United States v. Thomas</u>, 221 F.3d 430, 435 (3d Cir. 2000) (citations omitted).

Defendants offer no direct response to the Santos' request for leave to amend other than to cursorily state that it should be denied.  Nor do defendants identify any prejudice they would suffer in the event that the Santos were permitted to file a second amended complaint.  We find no other compelling reason under <u>Foman</u>— such as undue delay or bad faith—to deny leave to amend for most of the Santos' claims.  Count IV, however, cannot be saved by amendment, and leave to amend that claim will be denied due to futility of amendment.  Accordingly, we will grant leave to amend Counts I, II, III, and VI of the amended complaint.

## IV.     Conclusion

We will grant in part and deny in part defendants' motions (Docs. 19, 20) to dismiss for failure to state a claim for relief.  Counts I, II, III, IV, and VI of the amended complaint will be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Santos will be permitted to amend Counts I, II, III, and VI.  Count IV will be dismissed with prejudice.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania


Dated:     September 28, 2018