## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

LOUIS A. SANTO, JR. and
JOY M. SANTO

                Plaintiffs,

      v.

US BANK NATIONAL
ASSOCIATION,

BANK OF AMERICA
CORPORATION,

SPECIALIZED LOAN SERVICING
LLC,
and
WELLS FARGO & COMPANY, d/b/a
AMERICA'S SERVICING
COMPANY

             Defendants.

Case No. 1:17-cv-01597-CCC

(Chief Judge Connor)

**SECOND AMENDED
COMPLAINT
AND JURY DEMAND**

## INTRODUCTION

This is a consumer protection matter brought by homeowners attempting to remedy gross misconduct on the part of mortgage banks and mortgage servicers. The banks' and servicers' failure to properly apply payments, and subsequent misrepresentations, forced the plaintiffs into foreclosure and eventually bankruptcy.

## PARTIES

1.     Plaintiff Louis Santo, is an adult-individual residing in Dillsburg, Pennsylvania.

2.     Plaintiff Joy Santo, is an adult-individual residing in Dillsburg, Pennsylvania.

3.     Defendant US Bank National Association ("hereinafter "US Bank") is a business entity formed under the laws of Delaware and headquartered in Minneapolis, Minnesota.

4.     Defendant Bank of America Corporation (hereinafter "BofA") is a business entity formed under the laws of Delaware and headquartered in Charlotte, North Carolina.

5.     Defendant Specialized Loan Servicing LLC (hereinafter "SLS") is a business entity formed under the laws of Delaware and headquartered in Littleton, Colorado.

6.     Defendant Wells Fargo & Company d/b/a America's Servicing Company (hereinafter "ASC") is a business entity formed under the laws of Delaware and headquartered in San Francisco, California.

## JURISDICTION AND VENUE

7.     Jurisdiction of this Court arises under 28 U.S.C. § 1331, 12 U.S.C. § 2614 and 15 U.S.C. § 1681p, and supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

8.     Venue lies properly in this District pursuant to 28 U.S.C. § 1391(b).

## FACTS

9.     At all relevant times, SLS and ASC were acting as agents and representatives of US Bank and BofA.

10.     On January 4, 2006, Plaintiffs executed a mortgage and note payable to Monticello Bank.

11.     ASC was the servicer of Plaintiffs' mortgage and note, and was responsible for processing payments, keeping accurate records, properly applying payments, and communicating accurate information to Plaintiffs regarding their mortgage and note.

12.     Upon information and belief, during the relevant period, ASC was first acting as an agent and representative of BofA, and then acted as an agent and representative of US Bank.

13.     ASC's misconduct, described herein, was performed on behalf of, and on request of, BofA initially, and then performed on behalf of US

Bank.

14.   In 2015, SLS took over as the servicer of Plaintiffs' mortgage and note.

15.   As the new servicer, SLS was responsible for processing payments, keeping accurate records, properly applying payments, and communicating accurate information to Plaintiffs regarding their mortgage and note.

16.   SLS' misconduct, described herein, was performed on behalf of, and on request of, US Bank

17.   In 2007, Monticello Bank merged into CapitalSouth Bancorp.

18.   Upon information and belief, as a result of the merger, Plaintiffs' mortgage and note were transferred or assigned to CapitalSouth Bancorp.

19.   On August 21, 2009, CapitalSouth Bancorp was shutdown by the Alabama State Banking Department, and the FDIC was named receiver.

20.   According to the FDIC, all mortgages held by CapitalSouth Bancorp were assigned to Iberiabank.

21.   Upon information and belief, as a result of the failure of CapitalSouth Bancorp, Plaintiffs' mortgage and note were sold or assigned to Iberiabank.

22.   Plaintiffs were not notified of the merger of Monticello Bank and

4

CapitalSouth Bancorp.

23.    Plaintiffs were not notified that CapitalSouth Bancorp was the new holder of their mortgage and note.

24.    Plaintiffs were not notified of the shutdown of CapitalSouth Bancorp.

25.    Plaintiffs were not notified that their mortgage and note were assigned to or transferred to Iberiabank.

26.    Upon information and belief, Wells Fargo was not assigned Plaintiffs' note or mortgage through any valid chain of assignment.

27.    Upon information and belief, Bank of America was not assigned Plaintiffs' note or mortgage through any valid chain of assignment.

28.    Upon information and belief, US Bank was not assigned Plaintiffs' note or mortgage through any valid chain of assignment.

29.    Initially, Plaintiffs paid property taxes and insurance directly, and did not have an escrow account with ASC; however, in 2009, Plaintiffs requested that ASC begin escrowing taxes and insurance.

30.    ASC complied with Plaintiffs request and began escrowing funds for the taxes and insurance.

31.    In December 2011, Plaintiffs audited the escrow account with ASC and discovered numerous errors by ASC in the application of funds.

32.    As a result of ASC's errors, Plaintiffs demanded that ASC stop escrowing tax and insurance funds, and Plaintiffs recommenced paying taxes and insurance directly in January 2012.

33.    Despite ASC's past misapplication of escrow funds, Plaintiffs' specific instruction to ASC to stop escrowing funds, and Plaintiffs' direct payments of taxes and insurance, ASC continue to escrow funds.

34.    As a result of ASC's conduct, Plaintiffs' payments towards the outstanding principle and interest were misapplied.

35.    As a result of ASC's conduct, funds were placed into an escrow account that should not have been placed into that account.

36.    As a result of ASC's conduct, it appeared as if Plaintiffs' were behind on their payment obligations when in fact they were not.

37.    ASC's misapplication of funds was so severe that they were holding over $70,000 worth of Plaintiffs' monthly payments in a "suspense" account, and not applying them towards Plaintiffs' actual obligations.

38.    ASC was the servicer on Plaintiffs' mortgage and note at least through November 2015.

39.    As late as November 16, 2015, ASC was still demanding payment of an inaccurate amount.

40.    As late as November 16, 2015, ASC had not corrected the

misapplication of Plaintiffs' payments.

41.   At all relevant times, up through at least November 16, 2015, ASC was acting as an agent and representative of US Bank and BofA.

42.   Up through at least November 16, 2015, ASC's acts and omissions were performed on behalf of US Bank and BofA.

43.   At all relevant times, US Bank and BofA had knowledge of, consented to, and directed ASC to perform the acts described herein.

44.   On numerous occasions, beginning in March of 2013, counsel for US Bank, acting as US Bank's representative, promised that the error in Plaintiffs' account would be corrected.

45.   The errors were never corrected.

46.   In March 2012, US Bank instituted a foreclosure action in York County Court of Common Pleas.

47.   In its foreclosure complaint, US Bank misrepresented the amount owed on the note.

48.   In its foreclosure complaint, US Bank failed to properly credit Plaintiffs' account for the amount of payments they had made on the account.

49.   Under the terms of the Note and Mortgage, Plaintiffs had the right to cure any a default by paying all amounts due and owing as if there had been no acceleration ("Cure Amount").

50.     In the foreclosure complaint, US Bank, through its agent ACS, misrepresented the Cure Amount, by overstating the amount by thousands of dollars.

51.     As a result of the overstatement of the Cure Amount, Plaintiffs believed that they did not have adequate funds to cure the alleged default and prevent the foreclosure of their home.

52.     As a result of the overstatement of the Cure Amount, Plaintiffs believed that the only means to prevent the sheriff's sale of their home was by filing bankruptcy.

53.     On this basis, Plaintiffs did in fact file for bankruptcy to prevent the sale of their home.

54.     The filing of the bankruptcy severely damages Plaintiffs' credit standing and credit reputation.

55.     The filing of the bankruptcy caused Plaintiffs to lose out on credit opportunities, and has caused Plaintiffs significant loss in the form of higher interest rates.

56.     The issue over the amount owed on the note was not actually litigated in the foreclosure action.

57.     The issue over whether Plaintiffs' payments were properly applied was not actually litigated in the foreclosure action.

58.   In its foreclosure complaint, US Bank alleged that it was the holder of Plaintiffs' note and mortgage and had standing to enforce the note and mortgage.

59.   US Bank was not the holder of Plaintiffs' note and mortgage.

60.   The assignments attached to US Banks' foreclosure case filings clearly show that there is a break in the chain of assignments, and that US Bank was not the holder.

61.   On May 15, 2012, US Bank was granted a default judgment as a result of Plaintiff's failure to answer the foreclosure complaint.

62.   Following the default judgment, Plaintiffs were titled to "cure" or "reinstate" mortgage by paying the total amount due up to that date as if no delinquency had ever occurred ("arrears).

63.   The amount of arrears was not actually litigated in, necessary to, or relevant to the foreclosure action.

64.   Following the default judgment, Defendants US Bank, ACS and SLS misrepresented the amount of arrears, further damaging Plaintiffs.

65.   Despite multiple requests by Plaintiffs to US Bank and ACS, US Bank and ACS failed to correct the misrepresented arrears.

66.   Instead, US Bank and ACS sought to sell Plaintiffs' home at a sheriff's sale in October 2012.

67.    In an effort to stop the sale of their home, and to force US Bank and ACS to correct the misrepresented arrears, and their prior errors in misapplying payments, Plaintiffs filed for Chapter 13 Bankruptcy on October 5, 2012.

68.    On February 5, 2013, ASC, on behalf of, and at the direction of US Bank, filed a proof of claim in the bankruptcy matter alleging arrears on the note in the amount of $123,850.18.

69.    US Bank's proof of claim was false, inaccurate, and grossly misstated the amount of arrears.

70.    US Bank's proof of claim misstated the amount of Plaintiffs' alleged arrears as a result of Defendants prior failure to properly apply Plaintiffs' payments.

71.    US Bank's proof of claim also contained multiple inaccurate and improper charges, including, but not limited to, escrow amounts, sheriffs' fees, and attorneys' fees.

72.    US Bank's proof of claim also misrepresented that it was the holder of Plaintiffs' note and mortgage.

73.    Following US Bank's filing of the inaccurate proof of claim, it was repeatedly requested that US Bank correct its proof of claim.

74.    US Bank refused to correct its proof of claim, and maintained the

inaccurate filing.

75.   On September 13, 2013, Plaintiffs filed an objection to US Bank's proof of claim in the bankruptcy matter.

76.   Plaintiffs objection was based on the fact that the servicer, ASC, acting on behalf of US Bank and Bank of America, had misapplied Plaintiffs' payments over numerous years, failed to keep an accurate accounting of payments, and misstated the amount allegedly owed on Plaintiffs' note.

77.   Plaintiffs' objection to US Bank's proof of claim in the bankruptcy case was sustained, and the Judge struck the entirety of US BANK's claim in the bankruptcy matter on October 16, 2013.

78.   Despite the court ruling that the arrears claimed by US Bank on Plaintiffs' note were inaccurate, US Bank, ASC and SLS continued to demand payment of the inaccurate arrears.

79.   As late as November 16, 2015, ASC was demanding that Plaintiffs' pay an amount of arrears that the bankruptcy court had previously held Plaintiffs did not owe.

80.   As late as November 16, 2015, ASC violated the bankruptcy court's order by demanding payment of the inaccurate arrears amount.

81.   SLS took over as the servicer of Plaintiffs' note in 2015.

82.   When SLS took over as the servicer of the mortgage and note,

SLS continued the misconduct in misapplying Plaintiffs' payments on the note.

83.     ASC's original misapplication of funds was exacerbated by SLS' continued misapplication of payments.

84.     ASC's original misapplication of funds was exacerbated by SLS' failure to correct the prior errors.

85.     ASC's original misapplication of funds was exacerbated by SLS' failure to comply with the Bankruptcy Court's Order.

86.     As a result of SLS' conduct, it appeared as if Plaintiffs' were behind on their payment obligations when in fact they were not.

87.     Despite numerous requests to SLS to fix the problems caused by the misapplication of funds, SLS refused.

88.     In December 5, 2015, SLS notified Plaintiff that it had taken over as the servicer, and instructed Plaintiffs' to dispute the debt in writing if they disagreed with the amount allegedly owed.

89.     Plaintiffs complied with the instructions in SLS's December 5, 2015 correspondence and wrote a detailed letter to SLS describing the prior misapplication of payments, and requesting that SLS remedy the situation.

90.     Despite receiving Plaintiffs' written dispute and notification of error, SLS did not correct the error.

91.   Despite receiving Plaintiffs' written dispute and notification of error, SLS did not investigate Plaintiffs' dispute.

92.   Despite receiving Plaintiffs' written dispute and notification of error, SLS did not perform a reasonable investigation.

93.   SLS never informed Plaintiffs of the results of any investigation.

94.   SLS never informed Plaintiffs as to whether it concluded that there was, or was not an error.

95.   SLS did not remedy the errors caused by the misapplication of payments, but instead attempted to collect the inaccurate amount.

96.   SLS did not remedy the errors caused by the misapplication of payments, but instead attempted to collect an amount in violation of the bankruptcy Court's order.

97.   As a direct result of SLS's failure to respond to Plaintiffs' notice of error and dispute, investigate the dispute, or remedy the error, Plaintiffs' suffered significant damage.

98.   In March 2017, Plaintiffs sought modification of the mortgage and note to correct the prior misapplication of payments, and allow for Plaintiffs to make their monthly payments.

99.   SLS responded to Plaintiffs' modification request by demanding that Plaintiff pay the arrears that the bankruptcy court had previously ruled

were not owed.

100.   SLS responded to Plaintiffs' modification request by demanding that Plaintiff pay an amount that was inaccurate as a result of SLS and US Bank's failure to appropriately apply Plaintiffs' prior payments on the note.

101.   In response, Plaintiffs again pointed out that prior payments had been misapplied; yet SLS failed to remedy the situation in any manner, choosing instead to simply ignore the harmful errors.

102.   As a result of Defendants conduct, Plaintiffs suffered actual damages in the form of out-of-pocket costs, diminished credit rating, loss of credit opportunities along with emotional distress, including anxiety, frustration, embarrassment and humiliation.

103.   At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

104.   At all times pertinent hereto, the conduct of Defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for state and federal law and the rights of the Plaintiffs herein.

## COUNT I
## UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
## AGAINST US BANK AND ACS
## 73 P.S. § 201-2

105.  Plaintiffs re-allege all prior allegations as if fully set forth here.

106.  Plaintiffs are persons and consumers as those terms are defined and used in the Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1 et seq., ("UTPCPL").

107.  US Bank and ACS are persons as that term is define and used in the UTPCPL.

108.  US Bank and ACS's conduct described above occurred in the course of "trade" and "commerce" as those terms are defined by the UTPCPL.

109.  The underlying debt, purportedly held by US Bank, and serviced by ASC was primarily for personal, family or household purposes.

110.  US Bank and ACS individually, and collectively engaged in "unfair or deceptive acts or practices" as that phrase is defined by, and used in, the UTPCPL.

111.  More specifically, US Bank engaged in "unfair or deceptive acts or practices" when it engaged in the following non-exhaustive list of actions:

    A. Misapplied Plaintiffs' mortgage payments;

    B. Wrongfully sought foreclosure;

15

C. Filed a foreclosure complaint containing numerous false statements, inaccuracies, and misrepresentations;

D. Filed a foreclosure complaint contained wherein they misrepresented the Cure Amount;

E. Misrepresented that it was the holder of Plaintiffs' mortgage and note;

F. Misrepresented that it had standing to enforce the note and mortgage;

G. Refused to remedy the misapplication of payments when it was pointed out to US Bank on multiple occasions;

H. Filed a false and inaccurate proof of claim in Plaintiffs' bankruptcy matter;

I. Refused to correct the proof of claim when the errors were pointed out to US Bank;

J. Refused to honor the Bankruptcy Court's Order stating that the amount of arrears was inaccurate;

K. Misapplied escrow funds;

L. Improperly held escrow funds;

M. Improperly charge excessive escrow funds;

N. Wrongfully held over $70,000 of Plaintiffs' payments in a suspense account; and

O. Engaged in other unfair and deceptive acts and practices in relation to Plaintiffs' note and mortgage.

112.   US Bank and ACS engaged in the unfair and deceptive conduct described above willfully and intentionally.

113.   The unfair and deceptive conduct that US Bank and ACS engaged in was egregious and reckless.

114.   As direct result of US Bank and ACS's misrepresentations and fraudulent conduct, detailed above, Plaintiffs' believed that their only option to prevent the forced sale of their home was through the filing of a bankruptcy.

115.   The filing of the bankruptcy was a direct result of US Bank and ACS's conduct, and Plaintiffs' reliance on that conduct, and as detailed above, has caused Plaintiffs' significant economic and non-economic harm.

As a direct result of US Bank and ACS's conduct, Plaintiffs suffered severe harm, including, but not limited to, being subject to a wrongful foreclosure, being forced into bankruptcy to avoid losing their home, significant out-of-pocket costs, inability to "cure" or "reinstate" the mortgage, diminished credit rating, and lost credit opportunities.

## COUNT II
### BREACH OF CONTRACT
### AGAINST US BANK, N.A. AND BANK OF AMERICA

116.   Plaintiffs re-allege all prior allegations as if fully set forth here.

117.   The underlying note is a contract, signed under seal, and attached hereto as Exhibit A ("Note").

118.   The underlying mortgage is a contract, and attached hereto as Exhibit B ("Mortgage").

119.   The Note and Mortgage are interpreted together to determine the obligations of the parties.

120.   The Note and Mortgage required Plaintiffs' payments to be applied against the outstanding principle, interest and fees in a specific way.

121.   The applicable provisions, states in relevant part:

> all payments accepted an applied by lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.

122.   BofA and then US Bank at all relevant times allege that they are the holder of the Note and Mortgage, and therefore, the other party to the contract (the "Lender").

123.   Under the terms of the Note and Mortgage, the "Lender's" ability to force a borrower to pay escrow items is limited to only those escrow items that are actually due and owing.

18

124.   As detailed above, during the relevant period, Plaintiffs' paid their property insurance and taxes directly.

125.   As result, BofA and then US Bank, as "Lender" under the terms of the Note and Mortgage did not have the right to collect escrow for insurance and taxes.

126.   Despite the terms of the Note and Mortgage, BofA and then US Bank did allegedly collect escrow payments for insurance and taxes.

127.   US Bank and BofA, through their agents, failed to properly apply Plaintiffs' payments in accordance with the terms of the Note and Mortgage.

128.   US Bank and BofA's failure to comply with the terms of the Note and Mortgage, and properly apply Plaintiffs payments, is a material breach of the Note and Mortgage.

129.   US Bank and BofA were aware of their breach.

130.   US Bank and BofA were notified on multiple occasions that they were misapplying Plaintiffs' payments in breach of the Note and Mortgage.

131.   US Bank and BofA have failed to remedy their breach.

132.   US Bank and BofA's breach of the Note and Mortgage has caused Plaintiffs to suffer severe harm, including, but not limited to, being subject to a wrongful foreclosure, and being forced into bankruptcy to avoid losing their home.

133.   Plaintiffs' have suffered substantial consequential damages that were known to, and foreseeable by, US Bank and BofA.

<u>**COUNT III**</u>
**FAIR DEBT COLLECTION PRACTICES ACT**
**AGAINST SPECIALIZED LOAN SERVICING**

134.   Plaintiffs re-allege all prior allegations as if fully set forth here.

135.   Defendant SLS is a "debt collector" as defined by 15 U.S.C. § 1692a(6), as it regularly collects debts owed to another.

136.   Plaintiffs are "consumer[s]" as defined by 15 U.S.C. § 1692a(3).

137.   Defendant SLS violated the FDCPA.   Defendant SLS's violations include, but are not limited to, violations of 15 U.S.C. §§ 1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692g(b) as evidenced by the following conduct:

A.   Misrepresenting the amount owed, including the amount of arrears owed;

B.   Attempting to collect an amount, including the arrears amount, which was not authorized by the underlying contract or permitted by law;

C.   Failing to cease collection upon receipt of Plaintiffs' written dispute;

D.   Failing to provide verification of the debt to Plaintiffs;

    E.  Continuing to collect or attempt to collect on the debt prior to providing verification to Plaintiffs; and

    F.  Continuing to collect and attempt to collect on a debt after receiving Plaintiffs' written dispute.

138.  As a result of the above violations of the FDCPA, Defendant SLS is liable to Plaintiffs in the sum of Plaintiffs' statutory damages, actual damages, and attorneys' fees and costs.

<u>COUNT IV</u><br>
<strong>REAL ESTATE SETTLEMENT PROCEDURES ACT<br>
REGULATION X<br>
AGAINST SPECIALIZED LOAN SERVICING</strong>

139.  Plaintiffs re-allege all prior allegations as if fully set forth here.

140.  Plaintiffs are "person[s]" as defined by the RESPA, 15 U.S.C. § 2602(5).

141.  Defendants SLS is a "person" and "servicer," as defined by the RESPA, 15 U.S.C §§ 2602(5) and 2605(i)(2).

142.  On December 31, 2015, Plaintiffs sent SLS a notice of error and qualified written request.  Attached hereto as Exhibit C.

143.  Defendant SLS violated RESPA and Regulation X by failing to properly respond to Plaintiffs' notice of error.

144.  Defendant failed to correct the error(s), or provide the Plaintiffs with a written explanation/clarification, after conducting a reasonable

investigation, with a statement of the reasons Defendant believes the account was serviced correctly, failed to provide any documents it relied upon or notify the borrowers' of their right to request such documents, and the name and telephone number of an individual employed by the servicer who can provide assistance to Plaintiffs.

145.   As a result of the above violations of the RESPA and Regulation X, the arrears continue to be overstated and misrepresented obstructing Plaintiffs' ability to "cure" or "reinstate" their mortgage.

146.   As a result of the above violations of the RESPA and Regulation X, Defendant SLS is continuing to seek a sheriff's sale of Plaintiffs' home based on an inaccurate calculation of the arrears.

147.   As a result of the above violations of the RESPA and Regulation X, Plaintiffs declined a modification offer in March 2017 as it was entirely unclear whether the amount of arrears that were to be capitalized under the modification were accurate.

148.   As a result of the above violations of the RESPA and Regulation X, and specifically Defendant SLS's failure to properly respond to the notice of error, Plaintiffs have experienced emotional distress and mental anguish including loss of sleep, embarrassment and fear.

149.   As a result of the above violations of the RESPA and Regulation X, Plaintiffs have suffered additional actual damages.

150.   As a result of the above violations of the RESPA and Regulation X, Defendant SLS is liable to Plaintiffs for their actual damages, additional damages, and attorneys' fees and costs.

WHEREFORE, Plaintiffs respectfully request judgment, in their favor and against all Defendants jointly and separately as follows:

A.  Actual damages;

B.  Compensatory damages;

C.  Consequential damages;

D.  Statutory and additional damages;

E.  Punitive damages;

F.  Attorneys' fees and costs; and

G.  All other remedies that this Court finds just and proper.

## **JURY DEMAND**

Plaintiffs demand trial by jury on all triable issues.

Respectfully submitted,

_____
Joseph L. Gentilcore
FRANCIS & MAILMAN, P.C.
1600 Market Street, 25th Floor
Philadelphia, PA 19103
P: (215) 735-8600
F: (215) 940-8000
jgentilcore@consumerlawfirm.com